# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | |
|---|---|
| TONY POLLARD | CIVIL ACTION NO. 06-1493 |
| VS. | SECTION P |
| BURL CAIN, WARDEN | JUDGE MELANÇON |
| | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 by *pro se* petitioner, Tony Pollard, on August 31, 2006.  Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections, incarcerated at the Louisiana State Penitentiary, in Angola, Louisiana.  Petitioner challenges his February 19, 2003 convictions for the armed robbery of Molly Wilfong and Jason Oliver and possession of a firearm by a convicted felon, entered in the Twenty-Seventh Judicial District Court for St. Landry Parish, Louisiana.

This matter has been referred to the undersigned for review, report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE** because petitioner's first, third and fifth claims are

1

procedurally defaulted and petitioner's fourth claim is not cognizable on federal *habeas* review, and alternatively, that this petition be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts since it plainly appears from the face of the petition and exhibits annexed to it that the petitioner is not entitled to relief.

## FACTUAL AND PROCEDURAL HISTORY

Petitioner was charged with two counts of armed robbery and one count of possession of a firearm by a convicted felon.  Petitioner's memorandum to this court, the briefs filed by petitioner and his appellate counsel in the state courts, as well as the decision by the Louisiana Third Circuit Court of Appeal on direct appeal reveal that petitioner was accused of driving the getaway vehicle used in robbing Molly Wilfong and Jason Oliver.  A ski mask and clothing worn by the perpetrator during the robbery (who petitioner claimed was Shawn Andrus), as well as the gun used during the commission of the offense, was recovered from the bedroom where petitioner and his girlfriend, Shannon Hollahan, were staying.  Prior to trial, a defense Motion to Suppress petitioner's taped statement made to authorities was denied.  In this statement petitioner admitted that he drove the getaway vehicle and that the ski mask, gun and coveralls found in the room where he was staying were used by Andrus in robbing both victims.  At trial, petitioner took the stand and again admitted his involvement in the crimes, namely, that he was aware that Andrus was armed with a gun and that he was going to commit a robbery, that

upon Andrus' return he knew Andrus had committed a robbery, and that he shared in the proceeds of the robbery. [*See* rec. doc. 4, pg. 9; rec. doc. 6, exhibits, counseled direct appeal brief; rec. doc. 9-1, pg. 23, 32].

On February 19, 2003, petitioner was found guilty as charged following trial by jury.  Thereafter, petitioner was sentenced to serve 40 years on the armed robbery convictions and 10 years on the firearm conviction.  All sentences were ordered to be served concurrently.

Petitioner appealed his conviction to the Louisiana Third Circuit Court of Appeals. His court-appointed appellate counsel filed an *Anders* brief and a Motion to Withdraw.[1] However, petitioner filed a *pro se* brief asserting four assignments of error : (1) the trial court erred in denying petitioner's motion to recuse the judge and district attorney for comments made about petitioner's failure to accept a plea agreement offered by the state; (2) deprivation of a fair trial when Ashley Barker, the state's witness, committed perjury during her initial testimony, and then, after being coached by the prosecutor, was recalled to testify; (3) erroneous admission of "other crimes" evidence during the testimony of Detective Louviere deprived petitioner of a fair trial ; and (4) that petitioner's sentence was excessive.

---

[1] *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (when appointed appellate counsel determines that no non-frivolous issues or arguable grounds  supporting an appeal exist, after a conscientious review of the record, counsel may file a brief establishing those facts and requesting permission of the court to withdraw from the case).

On December 10, 2003, petitioner's conviction and sentence were affirmed by the Louisiana Third Circuit Court of Appeal.  *State of Louisiana v. Tony Pollard*, 2003-00941 (La. App. 3 Cir. 12/10/2003), 861 So.2d 949 (unpublished).  Petitioner's application for writs was denied by the Louisiana Supreme Court on May 7, 2004.  *State of Louisiana v. Tony Pollard*, 2004-0140 (La. 5/7/2004), 872 So.2d 1080.  In the Louisiana Supreme Court petitioner raised only three of his four *pro se* assignments of error, excluding his "other crimes" evidence claim.[2]  Further, petitioner's claim that his sentence was excessive was raised solely under Louisiana state law.

On February 26, 2005, petitioner filed an Application for Post-Conviction Relief in the district court arguing two claims for relief: (1) that he was denied rights guaranteed under the Sixth and Fourteenth Amendments to a fair and impartial trial when two of the State's witnesses, armed robbery victims Molly Wilfong and Jason Oliver, were present in the courtroom in violation of the court's sequestration rules; and (2) that he received ineffective assistance of counsel by counsel's failure to object or request a mistrial when the sequestration rule was violated.  On April 5, 2005, the trial court denied relief.

Petitioner's application for writs in the Louisiana Third Circuit Court of Appeals was denied on May 25, 2005. The appellate court found "no error in the trial court's ruling." *Pollard v. State*, KH 05-00599 (La. App. 3 Cir. 2005).   Petitioner's request for

---

[2]Petitioner indicated his desire to "withdraw" his claim in order to pursue the claim in later post-conviction proceedings stating "Appellant withdraws this claim from being reviewed in this Court and preserves the issue for post-conviction relief  ...." [rec. doc. 8, pg. 2 6].

review in the Louisiana Supreme Court was denied on April 17, 2006.  *State ex rel. Tony*

*Pollard v. State of Louisiana*, 2005-KH-1946 (La. 4/17/2006), 926 So.2d 501.

Petitioner signed his federal *habeas corpus* petition on August 28, 2006, and the

petition was received and filed by the Clerk of this Court on August 31, 2006.  In the

instant petition, Pollard asserts the above four claims allegedly raised on direct appeal and

the above two claims allegedly raised in post-conviction proceedings.

## LAW AND ANALYSIS

### I. Exhaustion and "Technical" Procedural Default

It is clear that petitioner has not properly exhausted his first, third and fifth claims

for relief in the Louisiana state courts, and that those claims are now procedurally

defaulted.  Those claims are that the trial court erred in denying petitioner's motion to

recuse the judge and district attorney for comments made about petitioner's failure to

accept a plea agreement offered by the State (claim 1 herein), erroneous admission of

other crimes evidence during the testimony of Detective Louviere which deprived

petitioner of a fair trial (claim 3 herein) and that petitioner was denied a fair and impartial

trial when two of the State's witnesses, armed robbery victims Molly Wilfong and Jason

Oliver, were present in the courtroom in violation of the court's sequestration rules (claim

5 herein).

The scope of federal *habeas* review is limited by the intertwined doctrines of

procedural default and exhaustion. Procedural default exists where (1) a state court

5

clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claim. *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir.1999) *citing Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

It is well settled that a petitioner seeking federal *habeas corpus* relief cannot collaterally attack his state court conviction in federal court until he has exhausted available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas,* 697 F.2d 697 (5th Cir. 1983); *Mercadel v. Cain,* 179 F.3d 271, 275 (5th Cir. 1999); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir.1999); *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir.1998).  In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal claim to each level of the state court in order to allow the state courts the initial opportunity to correct federal constitutional violations.  *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1349 (2004).  Moreover, the exhaustion requirement is satisfied only when the

6

grounds urged in a federal petition were previously presented to the state's highest court, in a procedurally proper manner, even when review by that court is discretionary. *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728 (1999);  *Magouirk v.  Phillips*, 144 F.3d 348, 360 (5th Cir. 1998) *citing Richardson v.  Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985); *Mercadel,* 179 F.3d at 275 *citing Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.1988).  In Louisiana, the highest court is the Louisiana Supreme Court.

A petitioner has "technically exhausted" his claims if he fails to properly and timely present them to each level of the Louisiana courts and is thereafter time-barred from seeking relief in those courts. *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir.1998) citing *Coleman v. Thompson*, 501 U.S. 722, 731-33, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995); *Coleman*, 111 S.Ct. 732, 735 fn. 1; *Bledsue*, 188 F.3d at 254-55; *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir.1998). In such a case, however, there is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358. Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted. *Id.*

Review of petitioner's filing in the Louisiana Supreme Court reveals that petitioner did not properly raise a federal claim based on the denial of petitioner's motion to recuse the trial judge and district attorney (claim 1 herein).  There is no argument of any federal constitutional issue or any federal jurisprudence supporting such a claim which could

7

have alerted that court that petitioner's claim arose under federal law.  To the contrary, petitioner argued this claim under Louisiana state law, namely, as violations of La.C.Cr.P. articles 671[3] (governing recusal of judges) and 681[4] (governing recusal of a district attorney), and with respect to the trial judge, as a violation of the Cannons of the Code of Judicial Conduct. [rec. doc. 91-, pgs. 8-12.  Although petitioner cited the 6th and 14th Amendments in the caption of his claim and stated in his final concluding sentence that "the Judge and the ADA should have been recused ... so that Appellant could have had a fair and impartial trial ..." [*see* rec. doc. 9-1, pg. 7 and 12], such passing, vague or fleeting references to the Constitution in a state court brief do not sufficiently afford the state court the opportunity to address an alleged violation of federal rights and hence, does not constitute a "fair presentation" for exhaustion purposes.  *Wilder,* 274 F.3d  at 260.  The undersigned therefore concludes that the Louisiana Supreme Court was denied a fair opportunity to consider petitioner's federal claim regarding the denial of his Motion to Recuse.[5]  Accordingly, because petitioner failed to raise a federal constitutional claim in

---

[3]Petitioner argued that recusal was proper under La.C.Cr.P. art. 671(A)(1) due to the judge's alleged  bias, prejudice and personal interest in the case.  *See* rec. doc. 9-1, pg. 9.

[4]Petitioner argued that recusal was proper because of the District Attorney's alleged "interest in the case" purportedly under La.C.Cr.P. art. 680(1).  *See* rec. doc. 9-1, pg. 12.

[5]  Indeed, petitioner's argument to this court is virtually identical to that submitted to the Louisiana Supreme Court, with the exception of additional references to the United States Constitution.  *see* rec. doc. 9-1, pg. 13 ("The failure of a judge to recuse himself in a criminal case may constitute violations of the Canons of the Code of Judicial Conduct, the provisions of La.C.Cr.P. Article 671(A)(1), *and both the Louisiana and United States Constitutions."*) and pg. 16 (arguing that the judge and DA should have been recused "to ensure Mr. Pollard's *constitutional and statutory rights to due process, a presumption of innocence,* and a fair and impartial trial.") (italicized portion added to the federal brief).

connection with his recusal argument, the federal claim attempted to be asserted herein remains unexhausted.

Likewise, review of petitioner's filing in the Louisiana Supreme Court reveals that petitioner did not properly raise a federal claim based on the alleged violation of the court's sequestration rules (claim 5 herein).  There is no argument of any federal constitutional issue or any federal jurisprudence supporting such a claim which could have alerted that court that petitioner's claim arose under federal law.  To the contrary, petitioner argued this claim under Louisiana state law, namely, as violations of La.C.Ev. article 615 (governing exclusion of witnesses in Louisiana state court trials), La.C.Cr.P. article 764 (governing exclusion of witnesses in Louisiana state criminal trials) and La.C.Civ.P. article 1631 (governing exclusion of witnesses in Louisiana state civil trials), citing a single Louisiana appellate court decision in a civil case in support of his argument (*Hopkins v. Department of Highways*, 350 So.2d 1271 (La. App. 3rd Cir. 1977). [rec. doc. 6, exhibits].  Although petitioner cited the 6th and 14th Amendments in the caption of his claim for relief, and makes two fleeting references in his argument to the effect that the alleged sequestration violation also was "in violation of a fair and impartial trial ..." [*see* rec. doc. 6, exhibits, writ application at pgs. 3 and 4], such passing, vague or fleeting references to the Constitution in a state court brief do not sufficiently afford the state court the opportunity to address an alleged violation of federal rights and hence, does not constitute a "fair presentation" for exhaustion purposes.  *Wilder,* 274 F.3d  at 260.

9

Indeed, and apparently for this reason, the sole reasoned Louisiana state court decision on this claim was rendered entirely on state law grounds.[6] [rec. doc. 8, pg. 41].  The undersigned therefore concludes that the Louisiana Supreme Court was denied a fair opportunity to consider petitioner's federal claim regarding the alleged violation of the rules of sequestration.  Accordingly, because petitioner failed to raise a federal constitutional claim in connection with his recusal argument, the federal claim remains unexhausted.

Under Louisiana Code of Civil Procedure 930.8, the time to present a federal claim has expired; petitioner is now time-barred from seeking review of a federal claim in the Louisiana courts.  Thus, any potential federal claim which petitioner may have had is also "technically" procedurally defaulted.  *See Wilder; O'Sullivan*; *Magouirk; Richardson; Mercadel; Dupuy; Coleman; Sones; Bledsue; and Fuller, supra.*  This court may therefore refuse to review petitioner's claims unless petitioner demonstrates that he should be excused from application of the procedural default doctrine by showing cause

---

[6]By decision dated April 5, 2005, the trial court denied relief as follows:

Upon review of the Court's tapes used to record said hearing, prior to opening arguments while the witnesses were being sequestered, the State exercised its statutory right to allow the victims/witnesses of the above mentioned crimes, and the case agent, to remain in the courtroom throughout the entirety of the proceedings. The Trial Court granted this request in accordance with Louisiana Code of Evidence Article 615, dealing with exclusion of witnesses. There are exceptions to the exclusion of witnesses, namely LSA C.E. art. 615 (2) and (4), which include the case agent and victims of the offense. As such, the Court did not abuse its discretion in allowing these witnesses to remain in the courtroom, and, in the same manner, Petitioner's trial counsel was not ineffective for failing to object to said witnesses. [rec. doc. 8, pg. 41].

and prejudice for the default[7] or that a miscarriage of justice will result from the denial of federal *habeas* review.[8] *See Finley*, 243 F.3d 215, 220-221 (5th Cir. 2001); *Coleman, supra; McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Moore v. Roberts*, 83 F.3d 699 (5th Cir.1996); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Sones*, 61 F.3d at 416. *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.1996) *quoting McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

Petitioner has been placed on notice that the procedural default doctrine may be applicable herein by virtue of the undersigned's October 16, 2006 Memorandum Order. [rec. doc. 5].  That Order permitted petitioner an opportunity to demonstrate that federal *habeas* review of his claims was not barred by the procedural default doctrine by setting forth facts demonstrating cause and prejudice or that the denial of *habeas* review would

---

[7]In *Murray v. Carrier*, the Supreme Court explained that "cause" requires an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard. *Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted)."

[8]In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of which he was convicted. *Corwin v. Johnson*, 150 F.3d 467, 473 (5 Cir.1998); *Ward v. Cain*, 53 F.3d 106, 108 (5 Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993).

constitute a miscarriage of justice because of petitioner's actual innocence.  However, petitioner has failed to submit any response to this court's Order addressing this court's procedural default concerns. [*see* rec. doc. 6].  Accordingly, federal review of these claims is barred by the procedural default doctrine.

The same is true with respect to petitioner's "other crimes" evidence claim. Petitioner did not raise this claim in the Louisiana Supreme Court on either direct or collateral review.  To the contrary, after asserting this claim on direct appeal in the Louisiana Third Circuit Court of Appeal, petitioner chose not to seek review of the Third Circuit's adverse decision, expressly stating that "Appellant withdraws this claim from being reviewed in this Court ...."  [rec. doc. 9-1, pg. 6].  Petitioner therefore did not include the claim as an assignment of error and provided the Court with no argument with respect to this claim.  Although petitioner attempted to "preserve the issue for post conviction relief", he did not thereafter raise the claim in his post-conviction application, instead asserting two claims regarding an alleged violation of the court's sequestration rules. [*see* rec. doc. 9-1, pg. 6 and rec. doc. 6, exhibits].  Accordingly, it is clear that petitioner's claim remains unexhausted.  Further, the state court to which petitioner would be required to return to meet the exhaustion requirement would now find the claim untimely.[9]  Hence, for purposes of federal *habeas corpus* review, the claim is "technically" procedurally defaulted.

---

[9] *See* La. S. Ct. Rule X, §5(a) which provides that  "An application seeking to review a judgment of the court of appeal ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal ... No extension of time therefor will be granted." *See also* La.C.Cr.P. art. 930.8.

Despite this court's notice that the procedural default doctrine may be applicable to petitioner's claims, petitioner has failed to submit any response to this court's order demonstrating that he should be excused from application of the procedural default doctrine by showing cause and prejudice for the default or that a miscarriage of justice will result from the denial of federal *habeas* review.  Accordingly, petitioner's "other crimes" evidence claim is procedurally defaulted and petitioner is therefore not entitled to federal review of this claim.

**Non-cognizable State Law Excessive Sentence Claim**

In his fourth claim for relief, petitioner argues that his sentence was excessive. Specifically, in both this and the Louisiana Supreme Court petitioner argues that his sentence violates Article I, § 20 of the Louisiana Constitution of 1974 and L.C.Cr.P. art 894.1; he does not raise his claim under the Eighth Amendment to the United States Constitution. *See* rec. doc. 9-1, pg. 16-19; rec. doc.  4, pg. 24-27.

28 U.S.C. § 2254(a) provides that federal courts "shall entertain an application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgement of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Thus, when reviewing  applications for *habeas corpus*, federal courts will only review allegations of deprivations of federal constitutional rights. *Deters v.  Collins*,  985 F.2d 789, 791 fn.  1 (5th Cir.  1993) citing 28 U.S.C. § 2254(a). Accordingly,  "[a] federal court is limited to deciding whether a conviction violated the

Constitution, laws or treaties of the United States." *Estelle v.  McGuire*, 502 U.S. 62, 68,

112 S.Ct.  475, 480 (1991).  Therefore, "a 28 U.S.C. § 2254 applicant must claim

violation of a federal constitutional right." *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th

Cir. 1998).  This is so because federal courts "do not sit as a super state supreme court

...." *Skillern v.  Estelle*, 720 F.2d 839, 852 (5th Cir.  1983).  It is not the province of a

federal *habeas* court to determine if the state courts properly applied state law.  *Estelle v.*

*McGuire*, 502 U.S. at 68, 112 S.Ct. at 480; *Narvaiz*, 134 F.3d at 695.   Rather, "[f]ederal

habeas corpus review is limited to errors of constitutional dimension ...." *Castillo v.*

*Johnson*, 141 F.3d 218, 222 (5th Cir. 1998).

      Review of petitioner's filings in this and the Louisiana Supreme Court reveals that

petitioner did not raise his excessive sentencing claim under federal law, or more

specifically, under the Eighth Amendment to the United States Constitution.  There is no

mention or argument of any federal constitutional issue or any federal law supporting

such a claim in his filings which could have alerted either court that his claim could arise

under federal law.  Petitioner does not cite the Eighth Amendment to the United States

Constitution or any cases directly construing the Constitution or the Eighth Amendment

in support of this claim.  Rather, this issue is raised in both this and the state courts solely

on state law grounds.  Petitioner argues a violation of Article 1, § 20 of the Louisiana

Constitution of 1974 as a result of the trial court's alleged non-compliance with the

sentencing guidelines of L.C.Cr. P. article 894.1, asserting that although he has an

extensive prior criminal record, none of his prior convictions were for crimes of violence, and that in the instant armed robberies he was not the "bearer of the weapon" and hence, was not the "actual robber".   The Louisiana Third Circuit Court of Appeals, the last state court to render a decision on the merits, therefore analyzed this claim under Louisiana standards.  For this reason, petitioner's fourth claim for relief, that his sentence was excessive, is not cognizable on federal *habeas* review and should be dismissed.[10]

Moreover, even if petitioner's excessive sentencing claim could be construed as a claim under the Eighth Amendment and hence, as cognizable on federal *habeas* review, this court must defer to the state appeals court's decision on the merits unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2); *See also Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166 (2003).  Petitioner has made no argument to this effect.   Thus, because petitioner has not demonstrated that the state appeals court's decision was contrary to, or an unreasonable application of,  the Supreme Court's Eighth Amendment jurisprudence, and has not demonstrated that the decision was an

---

[10]To the extent that the Louisiana Constitution is framed after the United States Constitution, *albeit* affording Louisiana citizens greater rights than those under its federal counterpart, that argument is unavailing.  It is clear that petitioner did not assert a violation of his Eighth Amendment rights in this or the Louisiana state courts. Moreover, although federal and state standards may be "somewhat similar", the United States Supreme Court has found that, for purposes of exhaustion of state court remedies, "mere similarity of claims is insufficient."  *Duncan,* 513 U.S. at 366 citing *Picard v. Connor,* 404 U.S. 270, 276 (1971) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Likewise, the undersigned finds that mere similarity of claims is insufficient to set forth a claimed violation of federal rights.

unreasonable determination of the facts in light of the evidence presented in the State court proceeding, under the applicable standard of review, petitioner's claim does not warrant federal *habeas corpus* relief.  *Smith v. Cain,* 253 F.3d 700 (5th Cir. 2001) (unpublished).

Finally, petitioner's claim fails on the merits, notwithstanding the applicable standard of review.  Generally, the Eighth Amendment protects against not only barbaric punishments, but also those that are grossly disproportionate to the crime committed. *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Ewing v. California*, 538 U.S. 11, 20-24 (2003); *Lockyer*, 538 U.S. at 72.  However, "[for] crimes concededly classified and classifiable as felonies, ... the length of the sentence actually imposed is purely a matter of legislative prerogative." *Harmelin v. Michigan,* 501 U.S. 957, 962, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) quoting *Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). A federal *habeas* court will not upset a state sentence within statutory limits unless it is so disproportionate to the offense as to be completely arbitrary and shocking.  *Bonner v. Henderson,* 517 F.2d 135, 136 (5th Cir.1975).  In this way, a "[court] must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *United States v. Gonzales,* 121 F.3d 928, 942 (5th Cir.1997); *see also Ewing*, 538 U.S. at 24-25.

In light of *Solem's* general constitutional principle and other relevant jurisprudence, the Fifth Circuit set forth its methodology for analyzing excessive sentence claims in *McGruder v. Puckett,* 954 F.2d 313, 315 (5th Cir.1992).  First, the court weighs the gravity of the offense against the severity of the sentence.  *McGruder*, 954 F.2d at 316.  Then, if the court determines that the sentence is grossly disproportionate to the offense, the court compares (2) sentences for similar crimes in the same jurisdiction and (3) sentences for the same crime in other jurisdictions.  Only if the court concludes in the first inquiry that the sentence is "grossly disproportionate" to the offense, does the court proceed to determine the second and third inquiries.  *United States v. Gonzales*, 121 F.3d 928, 942-943 (5th Cir. 1997).  If the court concludes that the sentence is not "grossly disproportionate," the inquiry is finished, and the court "defer[s] to the will of Congress." *Gonzales*, 121 F.3d at 942-43.

Here, the issue of whether petitioner's sentence is unconstitutionally excessive turns on whether petitioner's punishment arrives at this threshold level of gross disproportionality.   The Supreme Court noted the inherent subjectivity in making this threshold determination in *Rummel,* 445 U.S. at 304.  Moreover, the Supreme Court has noted that outside the capitol punishment context, successful proportionality challenges are "exceedingly rare" and constitutional violations are therefore reserved only for an "extreme" "extraordinary case."  *Ewing*, 538 U.S. at 21; *Lockye*r, 538 U.S. at 73 and 77. In *Rummel,* the Supreme Court upheld a life sentence under a recidivist statute for a

17

petitioner who had fraudulently used a credit card, passed a forged check, and finally, obtained $120.75 under false pretenses.  Subsequent jurisprudence in this circuit has used *Rummel* as a benchmark for distinguishing constitutional sentences and grossly disproportionate punishments. *Gonzales,* 121 F.3d at 943.

Measured against the *Rummel* benchmark, petitioner's concurrent forty year sentence on the armed robbery convictions and ten year sentence on the firearm conviction, all of which are within the statutorily prescribed limits, are plainly constitutional.  First, the gravity of the offenses committed by petitioner are clearly more severe than the crimes of fraud and forgery punished by life imprisonment in *Rummel*. Second, unlike the crimes at issue in *Rummel*, the crimes committed by petitioner against his victims, robbery by gunpoint while the perpetrator was cloaked in a ski mask, was violent, and therefore warrants the most severe punishment.  Finally, the record reveals that petitioner had previously been convicted of nine crimes, drug possession, robbery, resisting an officer, forgery and fraud, a marijuana charge, possession of stolen things, forgery, theft and burglary, demonstrating petitioner's consistent history of recidivism. Accordingly, applying the benchmark test set forth in *Rummel,* the undersigned finds that the facts of this case do not meet the threshold level of gross disproportionality; therefore, the sentences are consistent with the constitutional requirements of the Eighth Amendment.  Thus, petitioner's claim is without merit.

18

**II. Rule 4/Merits Consideration**

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."  *See also Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) citing  Rule 4, Advisory Committee Notes ("The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.'").

Based on the court's review of the pleadings and exhibits attached thereto, it is alternatively  recommended that the application be summarily dismissed with prejudice because petitioner is not entitled to relief.

***Standard of Review***

This *habeas* petition was filed on August 31, 2006; therefore the standard of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA).  *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir.

2000);  *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[11]   AEDPA substantially

restricts the scope of federal review of state criminal court proceedings in the interests of

federalism, comity, and finality of judgments.  *Montoya v. Johnson*, 226 F.3d 399, 403-04

(5th Cir. 2000) citing *Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d

334 (1989) and  *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389

(2000)[12] (noting that AEDPA "placed a new restriction on the power of federal courts to

grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. §2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted with
respect to any claim that was adjudicated on the merits in State court
proceedings unless the adjudication of the claim –

> **(1)** resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

---

[11]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief
... exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional
questions (i.e., application of constitutional law to fact).  In other words, a federal *habeas* court owed no deference to
a state court's resolution of such questions of law or mixed questions."  *Montoya ,* 226 F.3d at 403-04  citing
*Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West
1994).

[12]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice
Stevens delivered the opinion of the court with respect to other aspects of the opinion which have no bearing on the
issues herein.  Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

Under the deferential scheme of § 2254(d), as amended, this court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief.  *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and "correct" error in state court proceedings, but must exercise a more limited review . . ." *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court.   *Montoya,* 226 F.3d at 404;   *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) citing *Williams,* 120 S.Ct. at 1523;   *Montoya,* 226 F.3d at 403-04 citing

21

*Williams*, 120 S.Ct. at 1523.  "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Dowthitt ,* 230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

     Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing Williams,* 120 S.Ct. at 1523.  The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404 citing *Williams,* 120 S.Ct. at 1521-22.  A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly ... [r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

     Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741.  Federal *habeas* courts presume such factual determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  *Id.*; 28 U.S.C. § 2254(e)(1).  Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of  the State court proceeding.  *Id. citing* 28 U.S.C. § 2254(d)(2); *Knox,* 224 F.3d at 476 citing *Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir.2000).  *See also Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir.2001) ( "Unless rebutted by clear and convincing

evidence, a state court's determination of a factual issue shall be presumed to be correct. The presumption [that a state *habeas* court's factual findings are correct] is particularly strong when the state habeas court and the trial court are one and the same.").

### Denial of Motion to Recuse the Judge and District Attorney

Even if petitioner's recusal claim was not procedurally barred, petitioner is not entitled to federal *habeas corpus* relief.[13]  It is well settled that under the Due Process clause of the Constitution, the accused in any criminal trial is guaranteed the right to a fair and impartial tribunal.  *Nethery v. Collins*, 993 F.2d 1154, 1157 (5th Cir. 1993); *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625 (1955); *Bracy v. Gramley*, 520 U.S. 899, 905, 117 S.Ct. 1793, 1797 (1997).  However, the Due Process clause establishes a constitutional floor, not a uniform standard.  *Gramley*, 520 U.S. at 904-905.  Accordingly, a trial judge's disqualification under a state statute or code of judicial conduct do not ordinarily implicate the constitution. *Id.; Fero v. Kerby*, 39 F.3d 1462, 1479-1480 (10th Cir. 1994); *Dyas v. Lockhart*, 705 F.2d 993, 997 (8th Cir. 1983); *Nichols v. Scott*, 69 F.3d 1255, 1277 (5th Cir. 1995) *citing United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990) (noting that the federal statutory disqualification standard is "more demanding than that required by the Due Process Clause ...." Thus, conduct violative of the statute may not constitute a due process deficiency).  To secure *habeas* relief on this basis, the petitioner

---

[13]*See* fn. 13, *supra.*  Further, §2254(b)(2) provides, "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

must "establish that a genuine question exists concerning [the judge's] impartiality.*"*

*Bigby v. Dretke,* 402 F.3d 551, 559 (5th Cir. 2005) *citing Liteky v. United States*, 510 U.S.

540, 552, 114 S.Ct. 1147 (1994).  There must be an appearance of impropriety which

rises to the level of a fundamental defect resulting in a complete miscarriage of justice;

absent that level of severity, *habeas* relief is not cognizable.  *Couch*, 896 F.2d at 81.  Bias

is not lightly established because ordinarily courts "presume that public officials have

properly discharged their official duties."  *Bigby,* 402 F.3d at 558 citing *Valley v. Rapides*

*Parish School Board*, 118 F.3d 1047, 1052 (5th Cir. 1997) and *Bracy,* 520 U.S. at 909.

Thus, the United States Supreme Court has found that decision makers are

constitutionally unacceptable only when the decision maker has a direct personal,

substantial, and pecuniary interest in the outcome of the case; has been the target of

personal abuse or criticism from the party before him; and when he has the dual role of

investigating and adjudicating disputes and complaints. *Id*. (citations omitted); *See also*

*Baran v. Port of Beaumont*, 57 F.3d 436, 444 (5th Cir. 1995).

 Petitioner's claims of bias or prejudice are premised on Judge McGee's alleged

statement prior to trial that if petitioner did not take the State's plea offer of twenty-five

years, that he would sentence petitioner to more than fifty years.  The record, however,

does not support a constitutional basis for this claim.  Petitioner has not alleged any

adverse, biased or prejudicial rulings, actions or inactions by Judge McGee against him

which could even remotely be related to petitioner's refusal to accept the State's plea

offer.  To the contrary, the record reflects that petitioner's guilt was determined not by

Judge McGee, but by a jury of petitioner's peers. Furthermore, after the jury determined

petitioner's guilt, Judge McGee did not sentence petitioner to fifty years or more as

petitioner suggests would be the case.  Finally, the Judge contested petitioner's

allegations, testifying that although he talked about numbers in the abstract when

calculating the 85% rule, he never knows what sentence he will impose until he gets more

information such as a pre-sentence investigation.  Thus, other than petitioner's conclusory

claim that he was denied his right to a fair and impartial tribunal, there is no evidence of

Judge McGee's alleged impartiality, bias or prejudice to support a claim under the

constitutional standard.  Accordingly, petitioner is not entitled to federal *habeas* relief

with respect to this claim.

 The same is true of the alleged failure to recuse or disqualify the District Attorney.

Petitioner asserts that the district attorney's alleged statement that if petitioner did not

accept the twenty-five years being offered, he would "double bill" petitioner demonstrates

that the District Attorney had "an interest in the case", making it impossible for petitioner

to receive a fair and impartial trial.  However, given petitioner's extensive criminal

history, the District Attorney was merely stating a fact, that in the absence of his

acceptance of the plea agreement, petitioner was subject to sentencing as a multiple

offender.  This statement cannot therefore reasonably be construed as demonstrating

either impropriety on the part of the prosecutor or as the exertion of undue pressure.

For these reasons,  petitioner's claim is without merit; there is no support for petitioner's claim that he did not receive a fair or impartial trial as a result of the denial of his motion to recuse the district attorney.

Finally, under the applicable standard of review, petitioner is entitled to no relief on this claim.  In denying this claim, the Louisiana Third Circuit Court of Appeal found "no error" in the lower court's ruling denying petitioner's motion to recuse the judge based on the fact that petitioner "failed to establish that the judge was biased or unable to conduct a fair and impartial trial", noting that petitioner had "not pointed to any occurrence during trial to substantiate his position."  Accordingly, the claim was deemed as having "no merit." [rec. doc. 9-1, pg. 26-27].  Similarly, with respect to the district attorney, after citing the applicable standard, "that the district attorney has a personal interest in conflict with the fair and impartial administration of justice", the Third Circuit found that petitioner "did not bear his burden of proving the assistant district attorney should be disqualified."  This was so because the "possibility that a habitual offender bill would be filed if the Defendant chose not to accept the plea agreement was a fact of which the Defendant needed to be made aware" thus, "disqualification of the assistant district attorney was not warranted ...." [*Id*.].

Based on review of the relevant decisions of the United States Supreme Court, these findings are not contrary to, nor an unreasonable application of, federal law as determined by the United States Supreme Court, nor do these findings constitute an

unreasonable determination of the facts in light of the evidence presented.  Petitioner has failed to cite any United States Supreme Court case which supports either of his claims, and the undersigned's research has failed to discover any such precedent.  Moreover, as the state court found, petitioner has failed to demonstrate any  act or omission by Judge McGee establishing the claimed impartiality, bias or prejudice.  Thus, under the applicable standard of review, petitioner is not entitled to relief on either claim.

### *Ashley Barker's Alleged Perjury*

Petitioner argues that his sixteen year old niece, Ashley Barker, committed perjury when following her original testimony, after being "coached" by the prosecutor during a recess, the prosecutor recalled her to the stand to give additional testimony.  This claim was addressed on the merits by the Louisiana Third Circuit Court of Appeal on direct appeal.  That court found that "Ms. Barker's testimony was not inconsistent or contradictory" but rather, "[h]er later testimony expanded her original testimony regarding the Defendant's intention of naming Shawn Andrus as a co-perpetrator, but it was consistent."   The court additionally found that petitioner's suggestion that Barker had been "coached" by the prosecution was unsupported by the record because "[t]he issue of what was discussed during the recess was brought up by the prosecutor during his second questioning of Ms. Barker ... [and] the prosecutor did not advise Ms. Barker of what to say; rather, he reminded her as to what she had told him the previous day ... [and] told her to tell the truth." [rec. doc. 9-1, pg. 30-31].  In making these findings and

27

conclusions, the court summarized the trial transcript as follows:

> Ashley Barker, the sixteen-year-old niece of the Defendant, was called as a
> witness by the State. She testified that since the Defendant's arrest, he has
> called her house to check on her family. A couple of days following the
> Defendant's arrest, Mr. Barker spoke to him on the phone and he told her
> that he was going to say that Shawn Andrus was with him during the
> robbery. After Ms. Barker's testimony, the State called another witness and
> then recalled Ms. Barker to the stand.
>
> When she was recalled by the State as a witness, Ms. Barker confirmed that
> she and the prosecutor had just had 'a brief session outside.' She further
> testified that she and the prosecutor had met and talked the day prior to trial
> and she told him of the telephone calls she had gotten from the Defendant.
> In response to an objection by defense counsel, the prosecutor informed the
> judge that he thought that Ms. Barker would inform the court she did not
> tell the whole truth in her earlier testimony and that he thought she was
> ready to tell the truth. The prosecutor asked Ms. Barker if she wanted to tell
> the whole truth, and she replied that she did. The prosecutor then asked Ms.
> Barker if she was nervous when she was looking at her uncle, and she
> replied affirmatively. Ms. Barker then testified that on the day prior to trial,
> she told the prosecutor that the Defendant said he was 'gonna put the
> charges on Shawn Andrus' to 'take the rap for Shannon Hollahan.' Ms.
> Barker testified that she told the defendant that it was not right to do this
> because Shannon had been involved. According to Ms. Barker, the
> Defendant responded that he did not want his children's mother to be in jail.
> Upon being questioned as to the discrepancy, Ms. Barker explained that all
> of her testimony was truthful, but in her earlier testimony she did not say as
> much as she was supposed to. She confirmed that during the recess the
> prosecutor reminded her of what she had told him the day prior to trial. She
> acknowledged that when she spoke to the prosecutor she told him that she
> would say anything he wanted her to, but the prosecutor told her to tell the
> truth. Ms. Barker maintained that she did not lie during her earlier
> testimony, explaining that she just failed to tell everything. [rec. doc. 9-1,
> pg. 29-30].

Petitioner has failed to demonstrate that  the Third Circuit's decision was contrary

to, or involved an unreasonable application of, clearly established Federal law; and has

28

failed to  rebut the presumption of correctness with regard to the Third Circuit's findings

of fact.  Accordingly, federal *habeas* relief is not warranted.

The Due Process Clause of the Fourteenth Amendment forbids the State from

knowingly using perjured testimony. *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000)

*citing  Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

The Amendment also prohibits a conviction "obtained through the use of false evidence,

known to be [false] by representatives of the government."  *United States v. O'Keefe*, 169

F.3d 281, 291 (5th Cir. 1999) (citations omitted).  In order to prove that the State has

violated the Fourteenth Amendment by relying on perjured  testimony, the defendant must

demonstrate: (1) that a witness for the State testified falsely; (2) that such testimony was

material; and (3) that the prosecution knew that the testimony was false. *Knox*, 224 F.3d

at 477 *citing Giglio* at 153-54, 92 S.Ct. 763; *United States v. Haese*, 162 F.3d 359, 365

(5th Cir. 1998) *citing Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173 (1959).

Here, petitioner fails to satisfy the above enumerated factors.  More specifically, as

found by the Third Circuit, petitioner has failed to demonstrate that Ms. Barker testified

falsely.  In the passages cited by petitioner to this court, it is clear that Ms. Barker did not

lie in her original testimony, but rather, in her words, she "just did not tell all of what

[she] was supposed to say", "she just didn't tell all of it" because she "just like forgot".

However, after a "brief session outside" the courtroom where the prosecutor and Barker

talked about a conversation they had the prior day in which they had discussed calls

between Barker and petitioner, she remembered the complete substance of her

conversations with petitioner.  Accordingly, the prosecutor notified the court that Ms. Barker was ready to tell "the whole truth" meaning the whole story, including those portions of her conversations which she had previously failed to mention.  That is exactly what the Third Circuit found, that Barker did not commit perjury, but rather, consistent with her original testimony, merely expanded on that testimony.  Therefore, petitioner's alleged perjury claim is without merit.

The same is true as to petitioner's claim of witness "coaching."  The passages cited by petitioner reflect that the state prosecutor took proper action to ensure that the jury received Barker's complete testimony.  As correctly noted by the Third Circuit, Barker's supplemental testimony was not fabricated by the prosecutor as petitioner suggests, but rather was a recitation of the full substance of Barker's conversation with petitioner which had been previously divulged by Barker to the prosecutor.  Indeed, by recalling Barker to the witness stand, the prosecutor acted in accordance with his constitutional duty by not permitting inaccurate, or in this case incomplete, testimony to go uncorrected.  *See Haese*, 162 F.3d at 365 *citing Napue*, 360 U.S. at 269;  *See also Giglio*, 405 U.S. at 154.  Accordingly, the state court's decision should not be disturbed.

### *Sequestration of Victims*

Even if petitioner's sequestration claim was not procedurally barred, petitioner is not entitled to federal *habeas corpus* relief.[14]  Petitioner contends that he was denied a fair

---

[14]*See* fn. 13, *supra*.  Further, §2254(b)(2) provides, "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

and impartial trial when two of the State's witnesses, armed robbery victims Molly Wilfong and Jason Oliver, were present in the courtroom in violation of the court's sequestration rules.  More specifically, petitioner contends that Oliver was in the courtroom while Wilfong testified, and this "made his testimony easier" because he merely had to repeat what he had previously heard Wilfong state.  Accordingly, petitioner contends that Oliver should have been disqualified from testifying and because this was not done, his conviction should be reversed.  In support of this argument, petitioner cites a single instance where the prosecutor referred to a previously exhibited ski mask and photograph of the mask, which was apparently worn by the perpetrator during the robbery (presumably Andrus), and which was recovered in the room where petitioner was living along with the clothing worn during the commission of the offense and the gun used in the robbery, and asked Oliver whether it looked like the kinds of holes that were in the mask Oliver saw when he was robbed.

Initially, the undersigned notes that the Louisiana Constitution gives victims of crime an unqualified right to attend the trial of the person accused of committing the crime.[15] Article I, section 25 of the Louisiana Constitution provides that "[a]ny person who is a victim of crime ... shall have the right ... to be present ... during all critical stages of preconviction and postconviction proceedings."  La. Const. art. I, § 25.  This amendment was ratified and approved by the electors of the State of Louisiana at the

---

[15]This constitutional provision is consistent with provisions of the vast majority of States which protect a victim's right to attend trial of the accused either unqualifiedly or qualifiedly.  *See* THE CRIME VICTIM'S RIGHT TO ATTEND THE TRIAL: THE REASCENDANT NATIONAL CONSENSUS, 9 Lewis & Clark L. Rev. 481, 504 (2005) (collecting provisions and statutes).

congressional primary election held on October 3, 1998, was proclaimed and adopted by

the Governor on October 15, 1998, and became effective on November 5, 1998. *See*   La.

Const. art. I, § 25, Historical Notes.

Moreover, contrary to petitioner's allegations, there was no violation of the

Louisiana sequestration rules.  At the time of petitioner's 2003 jury trial and at the present

time, the Louisiana rules regarding exclusion of witnesses from the courtroom expressly

exempted victims of the offense from exclusion.[16]  Louisiana Code of Criminal Procedure

article 764 directs that exclusion of witnesses in Louisiana state criminal prosecutions is

governed by Louisiana Code of Evidence article 615.  Article 615(A) grants the parties

the right to have all witnesses excluded from the courtroom.  However, pursuant to article

615(B), certain witnesses are expressly excepted from exclusion from the courtroom, and

hence the article does "not authorize" the court to order their exclusion. La.C.Ev. art.

615(B). These witnesses include "[t]he victim of the offense or the family of the victim."

La.C.Ev. art. 615(B)(4).  Thus, under Louisiana law, petitioner was not entitled to have

the victims of his crime sequestered or have them excluded from the courtroom during

each other's testimony.  Indeed, based on this exclusion, Louisiana courts have rejected

the same argument presented by petitioner herein. *See State v. Johnson*, 833 So.2d 508,

511-512 (La. App. 4th Cir. 2002) (rejecting a sequestration claim based on the fact that

one of the two attempted armed robbery victims was in the courtroom while the other

---

[16]In both his brief to this court and his writ application to the Louisiana Supreme Court, petitioner cites a
version of article 615 which was applicable prior to the 1999 amendments to the article.  *See* Historical and Statutory
Notes citing Louisiana Acts 1999, No. 783, ¶ 2.

victim testified because under article 615(B)(4) each "had a right to be in the courtroom and was not subject to the sequestration order);  *State v. J.M.*, 941 So.2d 686, 693-694 (La.App.3rd Cir. 2006) (rejecting a sequestration claim based on the fact that three incest victims were permitted to stay in the courtroom while each other were testifying).  *See also State v. Lyles*, 858 So.2d 35 (La. App. 5th Cir. 2003) (finding no error in the court's permitting the victims to remain in the courtroom while tapes of their prior statements were presented to the jury prior to their testimony, citing article 615 as the basis for the ruling).

Additionally, even if the trial court had violated its rules regarding sequestration or improperly failed to exclude the victims from the courtroom, that claim does not merit federal *habeas corpus* relief.   The Fifth Circuit has held that a "state court's failure to follow its own procedural rules [on sequestration of witnesses] does not of itself raise federal constitutional questions cognizable in *habeas corpus*." *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir.1981).  The Fifth Circuit has also held that a *habeas* petitioner's "complaint that the trial court failed to invoke the rule of sequestration of witnesses does not raise a question that can be reached by federal *habeas corpus*, since such denial does not amount to a deprivation of [the petitioner's] constitutional rights." *Mathis v. Wainwright*, 351 F.2d 489 (5th Cir.1965).  Likewise, other courts have found that a trial court's failure to sequester witnesses does not amount to the deprivation of a constitutional right and therefore cannot form the basis of federal *habeas* relief.  *See Bell*

v. *Duckworth*, 861 F.2d 169, 170 (7th Cir. 1988)[17]; *King v. Elo*, 2000 WL 791721, *10

(E.D.Mich 2000); *Hammond v. Snyder*, 2000 WL 1239993, *5 (D.Del. 2000); *Gonzalez v.*

*Quarterman*, 2007 WL 999019, *6 (W.D.Tex. 2007); *Conroy v. Leone*, 2006

WL3246597, *10 (D.N.J. 2006).  *See also  State v. Harrell,* 312 S.E.2d 230, 236

(N.C.App. 1984) (rejecting an argument by a defendant convicted of assaulting police

officers that the victim-officers should have been sequestered.  While acknowledging that

the officers testified to the same "hotly debated" issues of fact, were subject to a civil suit

filed by the defendant, and had offered differing versions of several key points, the court

nonetheless found no constitutional requirement for sequestration. The court explained

that "[d]ue process does not automatically require separation of witnesses who are to

testify to the same set of facts."  Moreover, the court observed that generally "the trial and

disposition of criminal cases is the public's business and ought to be conducted in open

court. The public, and especially the parties, are entitled to see and hear what goes on in

court."); *Rucker v. Tollett*, 475 S.W.2d 207, 208 (Tenn. Crim App. 1971) (concluding

that the failure to sequester a witness while other witnesses testified "raises no

constitutional question"); *Landon v. State*, 1999WL46543 (Alaska Ct. App. 1999)

---

[17]In *Bell*, the Eighth Circuit  held as follows:
A refusal to exclude ("separate") witnesses until they testify is not a denial of due
process. Separation or sequestration of witnesses ... is a long-established and
well-recognized measure designed to increase the likelihood that testimony will
be candid. But the due process clause does not incorporate every refinement of
legal procedure designed to make trials fairer or more accurate-not even one
hallowed by time.   *Id*. at 170 (citations omitted).

(concluding "numerous courts have considered this issue and have concluded that a defendant has no constitutional right to exclude witnesses from the courtroom during the testimony of other witnesses. We see no reason not to follow the reasoning of these cases.").

Finally, even if the trial court erred in failing to disqualify Oliver and exclude his testimony, petitioner is unable to demonstrate sufficient prejudice to warrant federal *habeas* relief. *See Blackmon v. Johnson*, 145 F.3d 205, 211 (5th Cir. 1998).  *See also Lewis v. Bell*, 2006 WL 4557166, *26-27 (E.D.Mich 2006) citing *Ashker v. Class*, 152 F.3d 863, 872-873 (8th Cir. 1998).  Petitioner has failed cite any instances in Oliver's testimony which demonstrates that his testimony was tainted as a result of his having heard Wilfong's testimony or his exposure to the courtroom proceedings.  To the contrary, in the passage cited by petitioner, Oliver was merely testifying about an item of evidence which he observed first hand during the robbery; there is no indication in the passage that Oliver was prompted or coached by Wilfong's testimony with regard to his observations.[18]  A *habeas* petitioner fails to show prejudice where the critical portions of a witness' testimony comes solely from his personal knowledge of the circumstances. *Poyner v. State of Iowa*, 990 F.2d 435, 439 (8th Cir. 1993); *Ashker v. Class*, 152 F.3d at 872.  Thus, on the basis of petitioner's speculative argument, the undersigned cannot

---

[18]Indeed, given that it is highly probable that Oliver had given a prior statement to police officers shortly after the crime, it is unlikely that he would change his story at trial, thus providing defense counsel with ample grounds for cross examination.  Petitioner's claim of testimony "tailoring" is therefore most probably greatly exaggerated.

conclude that the failure to sequester Oliver or exclude him during the testimony of Wilfong resulted in a fundamentally unfair trial.   Furthermore, given that petitioner himself admitted in his statement to authorities that the ski mask was in fact the mask worn by Andrus during the commission of the robbery, Oliver's additional identification, even if tainted, does not rise to the level of prejudice required for reversal of petitioner's conviction. For these reasons, petitioner's claim does not warrant federal *habeas corpus* relief.

### *Ineffective Assistance of Counsel*

Petitioner alleges that he received ineffective assistance of counsel that petitioner received ineffective assistance of counsel because counsel failed to object when the sequestration rule was allegedly violated, or to request a mistrial on this ground.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).  The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688.  The court's scrutiny is "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689-90.  *See also Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir.

36

1985).  Thus, this court's review "strongly presum[es] that counsel has exercised reasonable professional judgment."  *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting  Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir.1986).

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[19] A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.   A petitioner must affirmatively prove prejudice.  *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998).  Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland'*s prejudice element."  *Sayre*, 238 F.3d at 635.  Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

---

[19]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment.  *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

> Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

> When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's  performance was deficient and that the deficiency prejudiced the defense. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

As set forth more fully above, there was no violation of the sequestration rule because under Louisiana law victims of the offense need not be sequestered.  La.C.E. art. 615(B)(4).  Therefore, had counsel objected to the presence in the courtroom of either Molly Wilfong or Jason Oliver,  the victims of the charged armed robberies, counsel's objection would have been overruled.  It is well settled that counsel do not fall below the level of objective reasonableness when they fail to make frivolous objections or  motions. *United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) *citing Green*, 160 F.3d at 1037; *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) *citing Koch,* 907 F.2d at 527; *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994).  Petitioner's claim therefore does not warrant federal *habeas corpus* relief as he has failed to demonstrate that his counsel's performance was deficient.

For the reasons set forth above,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED** and **DISMISSED WITH PREJUDICE** because petitioner's first, third and fifth claims are  procedurally defaulted and petitioner's fourth claim is not cognizable on federal

*habeas* review, and alternatively, that this petition be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts since it plainly appears from the face of the petition and exhibits annexed to it that the petitioner is not entitled to relief.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

**THUS DONE AND SIGNED** in Chambers, Lafayette,  Louisiana, November 9, 2007.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE